The next matter, number 221652, Fagbemi, Miranda v. Stephen Kennedy. At this time, would Attorney Baranoff please introduce herself on the record to begin? Good morning. May it please the Court, Susan Baranoff for Fagbemi, Miranda. I'll be addressing the first issue in my brief, and I would like to reserve a minute for rebuttal, if I may. Which issue is that, the McCoy issue? Well, it's McCoy plus. Okay, I hope. But it starts with McCoy, yes. Okay, because we're going to want you to get into the chronic issue, I think, as well. In Mr. Miranda's case, getting right to the McCoy issue, our position is that the Massachusetts Supreme Judicial Court unreasonably applied McCoy v. Louisiana. That case held that the Sixth Amendment right of a criminal defendant to make fundamental decisions about his defense encompassed the right to set the objectives of the defense. And in this case, as well as in McCoy, there were really dual objectives that the defendants had. One objective was to maintain innocence and to seek an acquittal. And in McCoy's case, he also wanted to avoid the opprobrium of admitting that he killed family members. In Mr. Miranda's case, he had a personal objective, as well. He wanted to avoid blaming his brother for something that he had done, shooting the victim, although he believed that he had done so in self-defense. And Mr. Miranda said to the trial judge, I can't ethically and morally blame my brother. I can't go along with this. But trial counsel's insistence on pursuing the defense that the brother, Wayne Miranda, was the killer, was in direct conflict with the defendant's objective. And it stripped him of client autonomy in this circumstance. And because this is the type of error that is structural error, reversal is required for that reason alone. There are other additional constitutional violations in the case, violation of the right to counsel. Can you address that one, in particular, the narrative testimony component of the Sixth Amendment right to counsel point, as opposed to the right to testify point? If I understand it, you're making a contention that there was strickland error by counsel's actions with respect to the provision of the testimony by the defendant, independent of a denial of the right to testify claim. Is that right? Yes. With respect to the narrative testimony, we're arguing both that that was an actual denial of counsel and also a strickland violation. Could you just address the strickland point? And in particular, if I'm following, there's two different components of your strickland argument. One is that we don't need to do a prejudice inquiry because it falls within chronic because there was the denial at the critical stage and the testimony was a critical stage or an absence of assistance or denial of assistance. And then the second is even if we don't apply chronic, nonetheless, just under strickland, there was deficient performance plus prejudice in this case. Well, in terms of strickland, the use of narrative testimony, the requirement that Mr. Miranda testify in narrative form, we say was substandard performance in and of itself. The court recognized that this denied him the guiding hand of counsel at a critical time. And so I don't see how it can be other than deficient performance. So the question really becomes, was that prejudicial, the second half of strickland? And the SJC made the error of assuming that the way, the version that Mr. Miranda gave made a first-degree murder conviction a foregone conclusion, which was not the case. I understand that point, and that goes to the case-specific strickland prejudice point. And if I'm understanding you, you're saying it was an unreasonable application of strickland's prejudice prong by not considering this wrinkle, so we reviewed de novo that question, or are you saying otherwise? Well, I'm saying all of that, but I'm saying... As to the first-degree point, that's what they failed to consider. Yes. But I thought you were making an antecedent argument under strickland, which is that chronic applies, so we just presume prejudice, and that the SJC failed to consider that possibility as well. Is that right? Yes, I think I understand the point better now. I see chronic as an exception to strickland. They were decided on the same day, and... It's an ineffective assistance, I guess, so it should be a better way of putting it. Chronic is an application of the right to effective assistance of counsel. I think chronic is more properly understood as a right to counsel case. A right to counsel at all, I see, because it's complete denial. Yes. And then you presume prejudice if it's denied. Correct. Okay, but you are making that argument? Yes. And is your contention the SJC just never addressed that argument? My contention is that they didn't agree with it. Well, that's very different for purposes of habeas review, whether they didn't address it or whether they did address it, and you don't agree with how they addressed it. They didn't meet it head-on in the lead opinion. The concurring justice did seem to grapple with it a little bit more. She cited chronic, but she purported to distinguish it. So the issue was raised and addressed by the SJC. I don't follow. Are you saying that a single judge in a concurrence is enough to count it as addressed for purposes of habeas review? No, I think that the lead opinion said, on the one hand, Mr. Miranda lacked the guiding hand of counsel, but we think the appropriate application here is strickland and by implication not chronic. I got it. I see what you're saying. I got it. And then the concurring judge had a slightly different take but said, I don't see this as a chronic error. But you see it as a chronic error. I definitely see it as a chronic error. When you have a client up there giving testimony in narrative form, it's undirected. There's no redirect. I think that is a deprivation of counsel. But we'd have to decide that was an unreasonable application, and we wouldn't just go right to de novo review on the idea it wasn't addressed at all. Pardon me? We would have to decide that their implicit conclusion that this doesn't trigger chronic was an unreasonable application of chronic, right? It's an unreasonable application of chronic. It's an unreasonable application of Ferguson v. Georgia, which definitely was cited to the SJC. And Ferguson v. Georgia dealt directly with a client who was forced to testify in narrative form and found a denial of counsel. But their state law required him, and here state law did not require it. That's correct. But our position is that government- So for purposes of being an unreasonable application, we're usually fairly deferential when the case law is distinguishable. But chronic itself didn't say you needed state action. And, in fact, there was a footnote in chronic- But chronic doesn't deal with this, doesn't identify provision of narrative testimony as a critical stage, does it? It doesn't, but that's implicit in Ferguson, and Ferguson is cited in chronic. Well, at least when there's a prohibition against counsel participating at all. So it just doesn't-there doesn't seem to be a case that deals directly with the situation here, which usually on habeas review is a problem for the-insofar as you're relying on chronic, that's different than whether you're making your point about Strickland prejudice and whether the SJC erred there by not considering how it might affect whether it's first degree or second degree. Well, I think chronic itself in a footnote, and I think it was note 31, talks about it's not necessary that there's government action creating the deprivation of counsel. I think it cites Kyler, which is a conflict of interest situation where the attorney's own situation- You're out of time, but just take a couple minutes just to address the Strickland prejudice piece and what you're saying the SJC did wrong. Are you saying it was an unreasonable application? Are you saying they just didn't apply Strickland correct? Just how we're supposed-what standard of review we're applying, where we're located under the standard, and then how that plays out on the facts here, why you can win on habeas, with respect to the Strickland prejudice point. Strickland, both the performance and the prejudice portions, is considered a mixed question of fact and law, and so you would review it in that fashion. I think really it's an unreasonable application of Strickland to ignore how prejudice played out in this case. When you read the transcript and when you consider that Mr. Miranda was saying, I didn't intend to kill this man, and he tried to explain what happened, which led him to shoot, for the SJC to look at all that, or perhaps not come to grips with all that and say, it was a foregone conclusion that this was going to be a first degree conviction based on his testimony. It was just an unreasonable determination. Thank you. Thank you, counsel. At this time, would Attorney Badway please introduce herself on the record to begin? Good morning. May it please the court, Assistant Attorney General Eva Badway for the respondent. As this court spoke of earlier, we are here on habeas review, and the standard of review is the SJC decision has to be contrary to or an unreasonable application of federal constitutional law. Here, the Massachusetts Supreme Judicial Court reviewed the petitioner's ineffective assistance of counsel claim using Massachusetts state law 33E review. They decided to write, and this court has said that it's the functional equivalent of Strickland. So for ineffective assistance of counsel, you start with the performance prong, and as to the testimony that was in the narrative form, the SJC said, according to Massachusetts state law, that was an error. And they said that counsel should have prepared this petitioner, but they went on to say that the error did not cause prejudice. In the prejudice analysis, what they did is they explained that here, counsel for the petitioner presented a solid defense for the petitioner, and although the petitioner was not prepared for his testimony, counsel did ask for an instruction on self-defense. And when the petitioner was being cross-examined, the petitioner's counsel objected throughout his cross-examination. Here, counsel for the petitioner presented a really good defense that was available to the petitioner. What he did is he attacked the credibility of the witnesses. And as both counsels, I mean... But just on the prejudice point, I think that your opponent's contention is that the SJC doesn't grapple, in its opinion, at any point with the possibility that the prejudice arose not from the failure of counsel's assistant to assist defendant in making a self-defense argument, but that the failure of counsel to assist defendant in providing the testimony prejudiced him by leading the testimony to be less effective than it could have been in justifying second-rather-than-first-degree murder. What's the answer to that? Does the SJC address that point? They do, Your Honor. And what they do is they talk about how counsel did assist the petitioner. The associate of the defense counsel introduced the petitioner on the record, and the SJC talks about that. And then at the end of the petitioner's testimony, the associate asks, is there anything else? And during the closing argument, the SJC talks about... Your focus, that would seem to bear on deficient performance, not prejudice. Well, no, I think, Your Honor, the prejudice, I think the SJC did focus very much on the prejudice. So where in the prejudice analysis by the SJC does it address not whether he would have had a viable-to-self-defense claim directed or undirected, but whether with direction he might have made a better case for something other than first-degree murder? Well, I think what the SJC did was point out everything that counsel did right and how it gave the jury the option to either believe the petitioner... I just am not following. The SJC, you seem to agree, accepts that counsel did not do what a competent counsel would do, or you do not agree with that? Well, what I think the SJC did was, according to Massachusetts Rules of Professional Responsibility, Rule 3.3, if you think your counsel, if you think your client is going to lie, you have to specifically put it on the record. And that is what the SJC said. Did the SJC make a ruling that counsel was competent? Well, I think that they made a ruling that there was deficient performance under... Okay. So then the only thing left is whether that deficient performance resulted in prejudice under Strickland. That is correct. With respect to that prejudice inquiry, your opponent is saying the SJC only focused on whether the deficient performance was prejudicial because it inhibited his ability to make out the self-defense argument, and it says that is not prejudicial because there is no way he would have been able to make out that argument, whether it helped or not helped. That is correct. And your opponent says that ignores the alternative position, that there was prejudice because with assistance, he might have made the case for second degree rather than first degree murder. Does the SJC address that issue? The SJC does not address first degree versus second degree, but the SJC does address everything counsel did do right and explained why this petitioner was not prejudiced and how this counsel thoroughly cross-examined the witnesses that the Commonwealth presented. So what the SJC did was talk about how counsel's performance outweighed what the petitioner said, like what he did gave the petitioner the best defense possible. That is what the SJC focused on. While finding it was deficient? No, no. The SJC found that not putting on the record and following the Massachusetts rule was deficient performance. That was the very specific part of deficient performance. Does it make a holding that failing to prepare or assist him in the provision of the testimony that he gave in court was competent? Well, it says what the petitioner's counsel did do was competent. Yes, as a whole, not the part about not preparing him. They talked about how counsel really went above and beyond, Your Honor, as far as in his closing argument. I'm just talking about the moment at the trial where defendant provides his narrative testimony. Correct. I don't see the SJC, but maybe I'm reading it wrong, saying that there was no deficient performance with respect to failing to prepare or assist him in the questioning in the provision of that testimony. Well, Your Honor, there was some discussion beforehand in the second motion to withdraw that was denied, and the counsel did not come out on the record and say that he thought his client was going to lie. He didn't say that outright, but there was some allusion to he didn't know what he was going to say. So that is how the Massachusetts rule of professional responsibility comes into play, and that's how that was discussed because there was evidence in the record. Let me just put it this way. On review to the SJC, the defendant here made the argument that there was Strickland error because he was denied assistance of counsel because there was deficient performance in not preparing and assisting him in the provision of the testimony, correct? I wouldn't say that the argument was made that clearly to the SJC, no. So are you saying it was waived? No, not that it's waived. So was it made? Not as clearly as you're saying it. I think that the petitioner took to task the narrative performance. Are you saying it's waived or not waived? It's not waived, Your Honor, and it was addressed by the SJC. Okay, so then in addressing it, did the SJC reject the argument that there was deficient performance in failing to prepare and assist the defendant in the provision of the testimony? No. Okay. So that means that's not been reviewed, there's no deference given to that because there's no finding that it was not deficient, correct? No, Your Honor, I think I said that it was deficient. The performance part they found that there was deficient performance. Okay, so then the only thing left is prejudice. Correct. So with respect to that, I guess I'm just not following why when I ask you about whether there was prejudice with respect to first degree versus second degree, you start talking about all the things the counsel did that was helpful. Well, because, Your Honor, I think that that is where the SJC focused on in finding that this petitioner was not prejudiced. When you look at the SJC decision, they talk about how counsel cross-examined the witnesses who were presented by the Commonwealth, how he did a really good job with his cross-examination, how he called into question the gunshot residue tests, the expert that was presented by the counsel. If you look at the SJC decision and how they went through prejudice, they didn't address the first degree versus second degree murder. They talked about everything counsel did right. Does any of those things bear on the first degree, second degree issue? Yes, I do think some of those things do when you look at it in the context of the presentation. Like what? I think when you look at the first and second responders, here the brother, Wayne, had already been convicted of second degree murder. The first person who reported, the first caller who called, they didn't have a clear view of the crime scene, the record shows, and that they only saw Wayne with the gun, so that there was a way for counsel to cross-examine that witness about it and what he actually saw because no one actually saw the petitioner here shoot. So, yes, I do think that that goes to the question of that, Your Honor. Thank you. At this time, would Attorney Baranoff please introduce herself back on the record to begin? She has a one-minute rebuttal. I just want to reply briefly to the notion that a good defense was presented here. This was a train wreck. You had trial counsel going one direction, trying to suggest that the brother was a shooter by cross-examining and attacking the Commonwealth's witnesses, and then by the defendant testifying as he always told counsel he was planning to do. And then by having his testimony undermined by the use of narrative testimony, counsel is holding him at a distance, clearly communicating with the jury that he has a problem with the testimony, not preparing him, not guiding him, and then in closing argument also suggesting rather strongly to the jury, you don't have to believe the defendant. You might think that he's lying to protect his brother, and this is sandwiched in between argument that, no, the Commonwealth's case doesn't hold water. The witnesses are not to be believed. So that plus the McCoy violation, you know, the disregard of the defendant's objectives here I think did not make for a good defense. Thank you. That concludes argument in this case. Counsel is excused.